**Willie James KING, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 183S16.

Supreme Court of Indiana.

Sept. 6, 1984.

B.K. Delph, Highland, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen Ransom Radford, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from convictions of robbery, a class C felony, Ind.Code § 35–42–5–1, and rape, a class A felony, Ind.Code § 35–42–4–1. Appellant and his accomplice were tried jointly before a jury. Appellant was sentenced to forty years for rape and five years for robbery to run concurrently.

Appellant raises one issue on appeal: whether he had effective assistance of counsel.

The facts tending to establish guilt demonstrate that on August 18, 1981 at about 11:00 p.m. a sixteen-year-old boy was walking his girlfriend home in Hobart, Indiana when a dark blue Ford Torino pulled up beside them. Two men got out of the car and said they were narcotics agents. The two men, appellant and Larry Johnson, proceeded to search the boy and girl; appellant took articles from the girl's purse while Johnson took the boy's wallet. Appellant was armed with a knife, and Johnson was armed with a gun. Both men threatened to shoot the boy and girl if they did not remain silent and cooperate. After they took the victims' property, they ordered the boy to leave. When he refused, Johnson knocked the boy to the ground, and the girl was pushed into the car. As the car drove away, the boy was able to memorize the license plate number, and he quickly ran home to telephone the police.

In the car the girl was forced to lay down in the backseat while the appellant drove. Shortly thereafter Johnson ordered her to remove her pants at the risk of being killed if she refused. Appellant then

stopped the car and he and Johnson switched places. Appellant forced the girl to engage in fellatio, threatened to kill her if she did not follow orders, and then forced her to engage in sexual intercourse against her will. Shortly thereafter Johnson forced her to engage in sexual intercourse against her will. After Johnson finished they drove to an alley where the girl was pushed out of the car. Johnson also got out of the car and proceeded to pull her along by her hair. Meanwhile, the appellant drove away in the car. Eventually the girl and Johnson reached a gas station, and, when the girl saw a car pull in, she ran free to the car.

The girl told the occupants what had happened. Meanwhile, the police had stopped the appellant driving the dark blue Torino nearby. The girl walked over to the officers and identified her purse, shoes, and underwear in the backseat. She also identified appellant as one of the men who raped her.

These are the facts pertinent to the appeal. Appellant's trial counsel filed a Motion to Correct Errors claiming insufficient evidence to support his convictions. He waived hearing on the motion and the motion was denied. Appellant's appointed appellate counsel filed a belated Motion to Correct Errors claiming ineffective assistance of counsel, and a hearing thereon was subsequently held.

At the hearing appellant testified that he had two trial attorneys, the first of whom was Herbert Shaps. Appellant stated that he discharged Shaps shortly after he hired him because he did not want to talk to the prosecutor about another criminal matter as Shaps had recommended. Appellant stated that his second attorney, Hamilton Carmouche, did not spend an adequate amount of time with him to prepare for trial. Appellant also claimed that there were two persons on the jury of questionable objectivity, and that he did not have a sufficient amount of time to review his pre-sentence report. Appellant further claimed that his counsel failed to respect his wish to secure a change of venue from the judge, and that he failed to raise timely objections to the prosecuting attorney's leading questions proposed to the victims on direct examination.

Mr. Carmouche testified at the hearing and stated that appellant's recollection of the time he spent with him was completely inaccurate. Mr. Carmouche further testified that his challenges to potential jurors are based on his client's concerns as well as his experience as a criminal lawyer, and that his judgment usually serves as the basis for his decision to challenge. He also stated that the proposed objections to the prosecutor's questions would have served no valid purpose because the questions would have been rephrased. With respect to appellant's allegation that his counsel failed to petition for a change of venue from the judge, Carmouche responded that there was no cause for such a petition because there was no evidence that the judge was biased.

The trial court denied appellant's belated Motion to Correct Errors following the hearing, and this Court must now decide whether the ruling was erroneous. The argument is based upon six alleged errors by counsel during the course of the criminal proceedings that indicate counsel's ineffectiveness: (1) that counsel inadequately prepared for trial because counsel only conferred with appellant three times for brief periods before the trial; (2) that counsel failed to move for a change of venue from the judge; (3) that counsel failed to challenge certain jurors whom appellant thought were biased; (4) that counsel failed to object to leading questions posed by the prosecutor to the eyewitnesses; (5) that counsel failed to give appellant adequate time to read his pre-sentence report; and (6) that counsel submitted a deficient Motion to Correct Errors to the trial court.

The substance of the United States Constitution's guarantee of the effective assistance counsel is illuminated by reference to its underlying purpose. "Truth", Lord Eldon said, "is best discovered by powerful statements on both sides of the question." The very premise of our

adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. *Herring v. New York*, (1975) 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593. It is that "very premise" that underlies and gives meaning to the Sixth Amendment. It is meant to assure fairness in the adversary criminal process. *United States v. Morrison*, (1980) 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564. Unless the accused receives the assistance of counsel "a serious risk of error infects the trial itself." *Cuyler v. Sullivan*, (1980) 446 U.S. 335, 343, 100 S.Ct. 1715, 1716, 64 L.Ed 2d 333. Thus the adversarial process protected by the Sixth Amendment requires that the accused have counsel acting in the role of an advocate. *Anders v. California*, (1967) 386 U.S. 738, 743, 87 S.Ct. 1396, 1399, 16 L.Ed.2d 493. The right to effective assistance of counsel is thus the right of the accused to require the prosecution to survive meaningful adversarial testing. When a true adversarial criminal trial has been conducted even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. *United States v. Cronic*, (1984) —— U.S. ——, 104 S.Ct. 2039, 80 L.Ed.2d 657.

▮ Recently the Supreme Court of Indiana in *Elliott v. State*, (1984) Ind., 465 N.E.2d 707, stated that the guidelines set forth in *Strickland v. Washington*, (1984) —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674, are to be followed when reviewing ineffective assistance claims.

### THE STANDARD OF COMPETENCY:

"The proper standard for attorney performance is that of reasonably effective assistance." *Strickland, supra* 104 S.Ct. at 2064.

### THE PRESUMPTION OF COMPTENCY:

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance, after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. *Engle v. Isaac*, (1982) 456 U.S. 107, 133–134, 102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland, supra* 104 S.Ct. at 2065.

### THE TWO PART STANDARD OF REVIEW:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. *Strickland, supra* 104 S.Ct. at 2064.

Appellant's first premise is that counsel did not take adequate time to prepare to defend his legal rights. There is an evidentiary dispute as to the actual number of

pre-trial conferences between appellant and his trial counsel. Assuming that appellant's contention of three brief conferences with him is accurate, such fact, without further illuminating matter cannot support the premise. It is perfectly conceivable that three private conferences with a client facing criminal charges are sufficient.

Appellant's second premise is that counsel failed to move for a change of venue. The only reason appellant gave for desiring a change of venue from the judge was that the judge was tough. This is not a lawful reason, and trial counsel's action in not moving for a change of venue was proper because it was clear that the judge was not biased or prejudiced.

Appellant's third premise is that his trial counsel failed to challenge certain jurors. Two of the jurors resided in the city where the alleged crime occurred and two of the jurors had some relation to law enforcement people. Without more the fact that some jurors had these characteristics does not demonstrate that counsel was deficient in representing appellant's interests at stake in the jury selection process.

Appellant's fourth premise is that trial counsel failed to object to leading questions posed by the prosecutor to the two eyewitnesses. Trial counsel's stated reason for not objecting to the leading questions was that the questions were of a factual nature and would have been placed before the jury even if he had been successful in objecting. It was the evaluation of trial counsel that repeated objections to the leading questions would have served no useful purpose and would have had an adverse effect upon the jury. Under the circumstances this was sound trial strategy.

Appellant's fifth premise is that counsel failed to give him adequate time to read his pre-sentence report. Assuming that trial counsel's action was deficient, we find no prejudice resulting therefrom. No error has been pointed out in the report which could have been corrected; consequently, the probability that he received an enhanced sentence due to prejudice is minimal.

Appellant's sixth premise is that trial counsel submitted a deficient Motion to Correct Errors. Assuming this to be true, there is no prejudice since replacement counsel filed a belated Motion to Correct Errors which preserved all valid issues for appeal.

We find that trial counsel's assistance was reasonably effective. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.